### In re COHEN.

(Circuit Court of Appeals, Second Circuit. June 14, 1913.)

No. 268.

1. BANKRUPTCY (§ 414*)—DISCHARGE—CONCEALED ASSETS—EVIDENCE.

Evidence on objection to discharge of a bankrupt, on the ground that he had concealed property belonging to his estate, *held* insufficient to show concealment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722; Dec. Dig. § 414.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 414*)—DISCHARGE—CONCEALED ASSETS—BURDEN OF PROOF.
    A creditor, objecting to discharge of a bankrupt on the ground that
    he had concealed property belonging to his estate, has the burden of
    proof.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 720–722;
    Dec. Dig. § 414.*]

Appeal from the District Court of the United States for the Eastern
District of New York.

In the matter of Irving Cohen, bankrupt. This cause comes here up-
on appeal from an order of the District Court, Eastern District of New
York (201 Fed. 188), denying the bankrupt's application for a dis-
charge. Reversed.

J. J. Lesser, of New York City, for appellant.
A. A. Silberberg, of New York City, for appellee.
Benjamin Rich, of New York City, for bankrupt.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The objecting creditor filed several
specifications of objection to discharge. The special commissioner, as
it seems to us quite properly, overruled all of them, except the single
one now before us, viz., that the bankrupt had knowingly and fraudu-
lently concealed property belonging to his estate. The property in
question is a stock of tinware, etc., of the value of about $2,000 in a
store on Staten Island, where the bankrupt has recently been conduct-
ing business, as he alleges for his elder brother, who has several sim-
ilar stores on the Island. Prior to 1908, the bankrupt, then 22 years of
age, was in partnership with one Phillips, six years older, in a retail
shoe business. It is the theory of the objecting creditor that, when the
firm of Phillips & Cohen went out of existence in 1908, the bankrupt
put the proceeds of its stock, or part thereof, into this tinware and
crockery business, which he has since been engaged in.

[1] The special commissioner reached this conclusion, although the
most he finds is that he has a "strong presumption" that the bank-
rupt has an interest in that business. The evidence is the other way.
The bankrupt and his brother Samuel both testify that, after the fail-
ure of the shoe business, Samuel put his brother into the store which
he (Samuel) had already established in order to give him something to
do and a chance to make enough out of it to support bankrupt and his
wife. There is no evidence to the contrary. The special commissioner
finds the story of the bankrupt and his brother "inherently improba-
ble." We see nothing improbable in the circumstance that his partner,
Phillips, with whom he had disagreed and had had controversies,
should, when it was evident the business was going to pieces and with-
out the knowledge of his younger partner, sell the entire stock to an
auctioneer and disappear with the proceeds. Nor is there any improb-
ability in the circumstance that Phillips' whereabouts is not known to
his family and that they think he is dead; nor in the further circum-
stance that the bankrupt himself—without money and with a brother

willing to take him into his store and let him earn a living out of it, if he could—failed to "pursue" his disappearing partner. Still less do we see any improbability in the bankrupt's elder brother doing this much for him after his shoe business went to smash. Other brothers have sometimes acted the same way under similar circumstances.

As to the statement of the bankrupt, so much relied on, made to one Cooper when bankrupt bought some crockery from him, viz., that the business was his: He was making the purchase from Cooper, not to replenish his brother's stock, which was mainly agate ware, but for himself, to do a little peddling of crockery on the side as an independent speculation. It is certainly not improbable that, in order to get it on his own credit, he told Cooper that the store was his. The evidence warrants the conclusion that he lied to Cooper to get credit, but certainly falls far short of proof that he did in fact own the business.

There may be some features of the transactions between the brothers difficult to understand, and perhaps open to suspicion; but they are both entirely uneducated, doing business on a very small scale, principally in the way of peddling, and the bankrupt is very young. No attempt was made by the trustee to get this property for the estate, and so establish the ownership one way or the other, and the estate has since been wound up.

[2] The burden of proof of his objection lies upon the creditor, and he has failed to sustain it.

The order should be reversed.